B. T. KING AND CALLIE E. KING, Respondents v. THE ALLEMANIA FIRE INSURANCE COMPANY, Appellant.

B. T. KING AND CALLIE E. KING, Respondents v. THE BRITISH AMERICAN ASSURANCE COMPANY OF TORONTO, CANADA, Appellant.

St. Louis Court of Appeals, May 21, 1889.

1. **Practice, Appellate:** WEIGHT OF EVIDENCE. Although a case was tried before a court sitting as a jury, and the evidence in support of the theory of the appellant was strong, while that in support of the theory of the appellee was weak, an appellate court will not reverse the conclusion reached by the trial court, provided that each theory was supported by substantial evidence and was submitted upon proper declarations of law.

2. **Practice, Trial:** INSTRUCTIONS. An instruction which comments upon the evidence is properly refused, even when the cause is tried by the court sitting as a jury.

*Appeals from the Greene County Circuit Court.* —HON.
W. D. HUBBARD, Judge.

AFFIRMED.

*Good & Cravens*, for the appellants.

*Boyd & Del~ney*, for the respondents.

THOMPSON, J., delivered the opinion of the court.

This case presents the same questions which were presented in the case of these plaintiffs against the Ætna Insurance Company, number 4319, and also in the case of these plaintiffs against the Insurance Company of North America, number 4343,—which cases were recently decided by this court,— but with this difference : In those cases, after the second loss occurred, the plaintiffs through B. T. King, acting under the advice of Captain Hubbard, received the money which it had been ascertained by the adjustment that those companies were liable to pay, and surrendered to the respective agents of those companies the policies issued by those companies to be cancelled in pursuance of the terms of the agreement which had been made on the adjustment of the first loss between the plaintiffs and the agents of those companies ; whereas in this case, when the check for the amount which the defendant was to pay to the plaintiffs in settlement of the first loss ( being, as in the other cases, the amount which had been ascertained to be due upon the adjustment, with a deduction of two per cent. in consideration of immediate payment, instead of a delay of two months, to which the defendant was entitled under the terms of the policy ) came into the hands of the defendant's agent at Springfield for delivery to the plaintiffs, the agent ascertained that the plaintiffs had changed their minds, and, still acting under the advice of Captain Hubbard ( who, it is to be observed,

represented the four companies who had written the second insurance upon the property ), changed their minds and concluded not to accept the money, if it involved a surrender and cancellation of the policy.

The plaintiff B. T. King testifies that the money was never tendered to him ; but it appears from the testimony of the defendant's counsel that the check was offered to the plaintiffs' attorney on condition of the defendant being absolved from liability for the second loss, which offer was refused. Of course there is no claim on the one hand that a formal tender was made ; and, on the other, there is no dispute that it would have been rejected if it had been made on the terms of settlement as understood by the defendant. That is to say, the only substantial difference between this case and the *Ætna case* and the *North American case* is that the defendant's check, drawn in pursuance of the agreement had with the adjusters, arrived a day later than the checks in those cases arrived, and when it arrived the plaintiffs had changed their minds. Why they had changed their minds does not appear, except that the plaintiffs were represented by the plaintiff B. T. King, and he professes to have been wholly ignorant of his legal rights and to have acted implicitly on the advice of Captain Hubbard. The four companies, thus writing the second insurance, paid to the plaintiffs the sums for which they would be liable for the second loss, upon the theory of the four companies who have not settled for the first loss being obliged to participate in the payment of the second loss. At the same time they took from the plaintiffs an agreement, the substance of which was that they would prosecute actions to ascertain the liability of those four companies in respect of the second loss ; and the plaintiffs at the same time agreed in substance with them, that they would not prosecute to judgments, actions which they had brought against the companies writing the new insurance, until the liability of the four old companies

should be ascertained. This, as a conclusion of fact, seems to make the difference between this case and the *Ætna case* and the *North American case* very plain ; and the plaintiff B. T. King substantially admitted that he was prosecuting this case for the benefit of the four insurance companies which had written the new insurance.

If, then, in affirming this judgment we are obliged to reach a result which is directly the contrary of that which we reached in the two former cases, it is to be confessed that we reach a result which is almost mathematically absurd. But, however incongruous the result at which we arrive may be, when compared with our decisions in the former cases, it seems unavoidable; for each case must stand upon the law as applied to its own facts, and we must, in the determination of each case, follow and apply the settled rules of law and procedure.

The evidence is to the effect that the basis of settlement between the plaintiffs and the twelve companies who were liable for the first loss was the same in respect of each company, that is to say, the proportionate amount which each company was to pay having been ascertained, it was agreed that in consideration of a prompt payment instead of delaying for sixty days, as the agents of all the companies understood they were entitled to do, the plaintiffs were to accept the money with a deduction of two per cent. and surrender the policies for cancellation. But the difference between the plaintiffs' theory and the defendant's theory consists in this: According to the plaintiffs' theory the policies were to be surrendered for cancellation, and the liability of the defendants upon them should cease in each case when the money thus agreed to be received should be paid; but according to the defendant's theory the liability of each defendant (whether those that paid at once or those that paid as soon as their respective agents could communicate with their home offices) was to cease on the day on which the agreement was made.

to-wit: on the sixteenth of March, although the plaintiffs were to hold the policies in each case until the money agreed to be paid by each company should be forthcoming. Now, the plaintiffs' theory is supported by substantial evidence, and the defendant's theory is supported by substantial evidence; and the fact that the evidence in support of the plaintiffs' theory may be weak while that in support of the defendant's theory may be strong does not enable us to overrule the conclusion upon the facts reached by the circuit judge who tried the cause sitting as a jury.

But we must of course look carefully to see, from the declarations of law given and refused, that the circuit judge tried the case on the proper theories of law, and especially that he did not ignore any applicatory rule of law brought to his attention in the form of a declaration of law tendered by the defendant. These declarations of law show that the court recognized the respective theories of fact of the opposing parties, and simply decided the case in favor of the plaintiffs upon the view which the court took of the weight of the evidence. This will appear from the following declarations of law given for the plaintiffs,—omitting what relates specially to the cases of the Ætna and North America:

"If the court, sitting as a jury, believes from the evidence that, after the first fire and the adjustment of the loss, the plaintiffs, in consideration of the promise by defendants to pay the loss as soon as a draft could be obtained, agreed and promised when the same was done to discount the loss two per cent. and cancel the policy and surrender the same, and that before the defendant paid or offered to pay said first loss to plaintiffs a second loss resulted from fire, then the liability of the companies defendant attached for said second loss, unless plaintiffs were guilty of some breach of the policy."

"If the court, sitting as a jury, believes, from the evidence, that at the time of the adjustment of the first loss, and before the second fire, an agreement was entered into by and between the plaintiffs and defendants by which plaintiffs in consideration of the agreement on the part of the defendants to promptly pay the loss and raise no question as to plaintiffs having complied with the terms of the policy, or as to its liability thereon, agreed with defendants on the payment of said loss, as adjusted, to cancel and surrender the policy; and if the court further find from the evidence that before said payment was made or tendered and before said policy was cancelled or surrendered the second loss occurred, then said agreement does not discharge defendant of liability for said second loss, even if the court, sitting as a jury, believes from the evidence that after said second loss plaintiffs accepted payment of said first loss and surrendered the policy."

The court, at the request of the defendant, gave the following declarations of law: "That it was not necessary for the defendant, the Allemania Insurance Company, to have made a tender of the amount of the first loss, to avail itself of the defense in this case, that it was agreed between it and the plaintiff that the liability on its policy should cease the day the adjustment was made."

"If the court believes from the evidence that, when the adjustment of plaintiffs' first loss was made, it was agreed and understood by the plaintiffs and the defendant companies, upon the promise of the defendant companies to pay to plaintiffs the respective amounts agreed upon between plaintiffs and defendant companies on account of said first loss without controversy, that there should be no further liability on the policies of the defendant companies from and after the day that said adjustment was made, then, and in that event, the plaintiffs cannot recover.

" If the court believes, from the evidence, that, on the day the first loss of plaintiffs was adjusted, it was agreed by and between plaintiffs and the defendant companies, that, if the defendant companies would pay their respective proportion of the losses that day, or as soon as drafts could be sent from the home office instead of waiting sixty days, the plaintiffs would discount the respective losses two per cent., and that there should from the day of said adjustment be no further liability on the policies of defendant companies, then and in that event the plaintiffs cannot recover."

The foregoing declarations of law show that the court applied the law as understood by each party to the theory which each party entertained of the facts. The only remaining question is whether the court erred in refusing certain declarations of law which were tendered by the defendant. These, so far as they relate to this defendant, were the following :

" That the contemporaneous and subsequent acts and conduct of a party to an alleged contract which go to show his interpretation of such contract are always entitled to consideration in determining the true meaning and intent of the parties to such contract; and if it appear from the evidence that after the adjustment of plaintiffs' loss of the fifth of March, and before their loss sued on in this action the plaintiffs informed other parties that the policy sued on, together with the other policies which were in force at the time of said loss, on the fifth of March, 1886, occurred, had been adjusted, settled and agreed to be surrendered, and were from the time of such adjustment no longer in force, and that being so advised by the agent of the companies afterwards issuing new policies they proceeded and took out through such agent new policies covering the full amount of the remaining stock on hand, such action and conduct on the part of plaintiffs will warrant the court in finding that the liability of the defendant and other

companies similarly situated ceased on and after said adjustment, and that plaintiffs cannot recover in this action."

That this instruction is bad, as being a comment upon the weight and probative effect of the evidence, is too plain for discussion. It is not rendered good by reason of the fact that a jury were not in the box but that the facts were tried by the learned judge sitting as a jury. The principles by which instructions are tested are the same, whether the facts are tried by a jury or by the judge. Where the judge sits as the trier of the facts, a party can no more, by tendering an instruction, demand a response from the court which involves a mere conclusion of fact, than can be done where the trial takes place before a jury.

The next instruction tendered by the defendant and refused by the court was the following:

"That unless the court believes from the evidence that the plaintiffs demanded payment of the Allemania Insurance Company of the amount of the first loss under and pursuant to the agreement made between said company and plaintiffs that said first loss should be paid as soon as its draft came from Pittsburgh, and that liability on its policy should cease on the day of the adjustment of the first loss, if the court believes such was the agreement, and further believes from the evidence that upon such demand made by plaintiffs, that said defendant should comply with its part of the agreement, defendant refused to do so, then plaintiffs are not entitled to recover against defendant on the ground that defendant has failed to pay said first loss."

This instruction is worded so obscurely that we have had difficulty in understanding its meaning. But we take it to mean that if defendant's theory of the contract of March 16 is found to be true, the fact that the defendant has not paid what it agreed to pay under that contract in pursuance of a demand of the plaintiffs, does not entitle the plaintiffs to recover in this action.

Of course it does not. Each loss furnishes a separate cause of action. The entire hypothesis of fact presented in this instruction might be cut out and the conclusion standing alone, that the plaintiffs are not entitled to recover in this action because the defendant has failed to pay the first loss, would be perfectly good. But the defendant got the full benefit of the principle embodied in this instruction in the first instruction given at its request as above set out, which stated without any qualification, that it was not necessary for the defendant to have made a tender of the amount of the first loss to avail itself of the defense which it sets up in this case.

It follows from the foregoing that we must affirm this judgment. It is so ordered. All the judges concur.

This case of B. T. King and Callie E. King, respondents, *v.* The British American Assurance Company of Toronto, Canada, appellants, was tried on the same evidence and comes here on the same bill of exceptions as in the case of B. T. King *et al. v.* The Allemania Fire Insurance Company. For the reasons given in the opinion filed in that case, the judgment of the circuit court in this case will be affirmed. It is so ordered. All the judges concur.